**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| STEPHEN L. GILLESPIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12-CV-947-W-DGK |
| | ) | |
| BLOCK MAINTENANCE SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART
## BMS'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Stephen L. Gillespie ("Gillespie") brings this action against his former employer, Defendant Block Maintenance Solutions, LLC ("BMS"). After his discharge, Gillespie sued BMS on claims arising from his employment and his discharge.

Pending before the Court is BMS's Motion for Partial Summary Judgment (Doc. 94). For the reasons below, BMS's motion is GRANTED IN PART and DENIED IN PART.[1]

### Background[2]

The following facts, which the Court views in the light most favorable to Gillespie, are taken from the record evidence. BMS provides maintenance and construction services under contracts with its clients. At all relevant times, BMS had a contract to provide employees to work onsite at the Plaza Corporate Center Building in Kansas City, Missouri. BMS's client representative Greg Norris ("Norris") managed these properties.

---

[1] BMS requests a hearing to present oral argument on its motion. Because the record adequately presents the relevant facts and legal arguments, the Court denies BMS's request.

[2] The Court has omitted properly controverted facts, facts that are immaterial to the resolution of the pending motion, facts that are not properly supported by admissible evidence, legal conclusions, and argument presented as fact. For example, in the entirety of the "Arguments and Authorities" section of his brief, Gillespie provides a total of three citations to the record. His unsupported denials and recitations of facts are insufficient to controvert BMS's properly supported allegations. *See* L.R. 56.1(a).

In January 2010, Ron Fredericks ("Fredericks"), the director of BMS, hired Gillespie as a maintenance and utility employee. Gillespie was initially assigned to work under Norris. Over the next fourteen months, Gillespie and Norris's working relationship deteriorated. Upon Gillespie's request and to defuse the growing tensions between Gillespie and Norris, in July 2011, Fredericks transferred Gillespie to a position where he no longer reported to Norris.

On Friday, August 26, 2011, Gillespie returned to the Plaza Corporate Center Building where he no longer worked. Upon seeing Gillespie in the parking lot, Norris called Gillespie's work-provided cellular phone to request that he return his building access cards while on the premises. Gillespie told Norris that he did not have the access cards with him and that he would return them through Fredericks. The two concluded their conversation, and the phone call ended.

Immediately thereafter, Gillespie believed that Norris was following him into and through the building. Norris kept his distance from Gillespie in an apparent attempt to avoid confrontation with him. Gillespie then called Norris back to confront him about this perceived "stalking event." Norris did not answer the phone call, so Gillespie left the following voice message: "Hello, Greg. I think you know who this is. Just wanted to ask you a question. Are you stalking me? Do you have the balls to call and tell me? Bye." (Doc. 95-1, at 11).

Norris retrieved the message from his voicemail and forwarded a copy of the message to Fredericks. Gillespie contacted Fredericks as well to advise of the incident. Fredericks told Gillespie to report to his office right away when Gillespie returned to work on Monday.

That Monday, August 29, 2011, Gillespie reported to Fredericks's office. Fredericks played for Gillespie the message he had left for Norris, explaining that the message violated company policies prohibiting the "use of abusive, threatening or inappropriate language toward a

2

supervisor" and the "[t]ransmission of obscene, slanderous, harassing or other inappropriate messages by E-mail, fax, voice mail, etc." (Doc. 95-4, at 6). Fredericks then fired Gillespie.

At the time, Gillespie was 61 years old. During his tenure at BMS, Gillespie had never complained to Fredericks about any age discrimination.

Gillespie turned in a timesheet to report the hours he worked for the week prior to his termination, but did not submit a timesheet representing he performed work on August 29. BMS processed the last timesheet Gillespie submitted, and paid him accordingly. Gillespie later wrote Fredericks a letter requesting his wages due, but not specifically demanding payment for August 29. BMS has never paid Gillespie for any work performed on August 29.

On October 19, 2011, Gillespie wrote Fredericks another letter, demanding "a written statement setting forth my dates of employment, explaining my duties while employed by Block Maintenance Solutions and the true reason why I am no longer employed by that company" (Doc. 95-16, at 2). Gillespie mailed this letter to Fredericks at BMS via United States Postal Service certified mail. Although Fredericks claims he never saw the letter, his assistant signed a receipt for some piece of certified mail from Gillespie on October 20. BMS did not respond to that letter.

Gillespie sued BMS for claims related to his employment, and BMS removed to this Court. The Amended Complaint (Doc. 92-1) charges five counts; BMS now moves for summary judgment on all but Count I.

**Standard**

A moving party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the

3

governing law," and a genuine dispute over a material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether a jury question presents on an element, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor. *Johnson v. Wells Fargo Bank, N.A.*, 744 F.3d 539, 541–42 (8th Cir. 2014).

To discharge its burden, the movant must identify portions of the record that demonstrate the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(a). If the movant does so, then the nonmovant must respond by submitting evidentiary materials establishing the existence of a genuine dispute surrounding an element essential to his case. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). To carry this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmoving party must specifically controvert any given fact set forth in the movant's brief by "refer[ring] specifically to those portions of the record upon which the opposing party relies," or else the court will deem that fact admitted for summary judgment purposes. L.R. 56.1(a).

## Discussion

BMS moves for summary judgment on Counts II, III, IV, and V of the Complaint, which allege violations of the Missouri Employment Security Act, the Missouri Human Rights Act, and the Missouri Wage, Hour, and Dismissal Rights statutes.

### I. Because the Missouri Employment Security Law does not provide a private cause of action, BMS merits summary judgment on Count II.

Count II of the Complaint charges a violation of the Missouri Employment Security Law, Mo. Rev. Stat. §§ 288.010–.398. Neither the Amended Complaint nor Gillespie's responsive suggestions identifies the legal authority giving rise to a private right of action under the

4

Employment Security Law.  Without a private right of action, Gillespie cannot establish a claim.

BMS is entitled to summary judgment on Count II.

## II.     Gillespie cannot make a submissible case on any theory of Count III.

In Count III, Gillespie alleges that when BMS terminated his employment, it violated the

Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. §§ 213.010–.137, in two different ways.

First, it discriminated against him on the basis of his age.  Second, it retaliated against him for

complaining to BMS about its age discrimination.

### A. Gillespie provides no evidence that his age was a contributing factor to his discharge or discrimination.

Gillespie charges that BMS discriminated against him on the basis of age.  The MHRA

makes it unlawful for an employer to discharge an employee on the basis of age.  Mo. Rev. Stat.

§§ 213.010(1), 213.055.1(1)(a).  There are many ways for an employer to incur liability under

the MHRA, but as relevant here, Gillespie must prove the following to prevail on his MHRA age

discrimination claim: (1) he is between the ages of 40 and 69; (2) his employer discharged or

discriminated against him; and (3) his age was a "contributing factor" to the discharge or

discrimination.  *See id.* §§ 213.010(1), 213.055.1(1)(a); *Daugherty v. City of Md. Heights*, 231

S.W.3d 814, 820 (Mo. 2007).  BMS challenges only the third element in Gillespie's MHRA age

discrimination claim, arguing that Gillespie cannot prove his age was a contributing factor to his

discharge or any discrimination.

Gillespie has not introduced enough evidentiary materials to make a prima facie showing

of age discrimination.  Gillespie argues that he was actually fired because of his age, but cites no

evidentiary materials in support and so effectively admits BMS's allegations.  *See* L.R. 56.1(a).[3]

---

[3] For example, Gillespie argues in his brief that he suffered "disparate treatment . . . in the form of harder physical and dangerous work that Plaintiff was assigned, that was not assigned to younger people or to any one."  (Doc. 98, at

While some parts of the record indicate that BMS gave Gillespie job duties that were made difficult or unsafe by his age, Gillespie adduces no evidence that BMS gave him those job duties *because* of his age (Doc. 95-1, at 30). Rather, the record shows that BMS fired Gillespie for leaving Norris an arguably threatening voicemail message, which violated written company policy. There is thus no genuine dispute over facts material to this claim.[4] The Court grants BMS summary judgment on this part of Count III.

### B. Gillespie provides no evidence that he complained to BMS about age discrimination.

The second component of Gillespie's MHRA claim is that BMS discharged him in retaliation for complaining about his age discrimination. Under the MHRA, an employer may not "retaliate . . . in any manner against any other person because such person has opposed any practice prohibited by this chapter or because such person has filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing conducted pursuant to this chapter." Mo. Rev. Stat. § 231.070(2). To establish that an employer retaliated against an employee for exercising his MHRA rights, the plaintiff must show: "(1) he complained of discrimination; (2) the employer took adverse action against him; and (3) a causal relationship existed between the complaint and the adverse action." *McCrainey v. Kan. City Mo. Sch. Dist.*, 337 S.W.3d 746, 753 (Mo. Ct. App. 2011).

The first element is not satisfied here. Fredericks swears that Gillespie never made any complaint of age discrimination to him. This shows that Gillespie did not complain to anyone at

---

5). No citation to the record accompanies this statement, so it does not help show there is a genuine dispute of a material fact over this claim. *See* L.R. 56.1(a).

[4] A burden-shifting framework applies to MHRA claims such that if the plaintiff shows a prima facie case of age discrimination in employment, the burden shifts to the employer to provide a legitimate, non-discriminatory reason for his discharge. *See Grissom v. First Nat'l Ins. Agency*, 364 S.W.3d 728, 739 (Mo. Ct. App. 2012). Because Gillespie fails to establish a prima face case, the Court need not consider whether a reasonable jury could find BMS's explanation for firing Gillespie to be legitimate and non-discriminatory. *See id.*

BMS about age discrimination before his discharge. Again, Gillespie fails to indicate what specific facts in the record show he complained of discrimination. Thus, there is no genuine dispute over material facts on this claim. Summary judgment is granted on the remainder of Count III.

### III. There is no genuine dispute that Gillespie failed to make a proper request for unpaid wages under Count IV.

BMS also moves for summary judgment on Count IV, which alleges BMS violated Mo. Rev. Stat. § 290.110. Under that statute, employers must send discharged employees a check for their unpaid wages within seven days of a written request. Mo. Rev. Stat. § 290.110; *Taylor v. Goldammer*, 944 S.W.2d 216, 218 (Mo. Ct. App. 1997). Gillespie argues that BMS violated the statute by failing to pay him for work performed on August 29, 2011, the date of his discharge.

BMS did not receive a fair written request that it had to pay wages to Gillespie for that day. Gillespie's undated demand letter requested the balance of his "final compensation", but did not specially demand payment for work performed on August 29. Further, Gillespie never submitted a timesheet for that day. Therefore, BMS never received the notice required under Section 290.110 necessary to recognize and evaluate any claim for unpaid wages after compensating Gillespie for the known work he performed up through his discharge. Gillespie cannot succeed on this claim, so BMS is entitled to summary judgment on Count IV.

### IV. Gillespie can establish a claim under Count V for failing to provide the reason for termination.

Finally, BMS seeks summary judgment on Count V for violating Mo. Rev. Stat. § 290.140. That section generally provides that upon written request, an employer must inform a discharged employee the true reasons it discharged the employee. Mo. Rev. Stat. § 290.140(1). The employer has forty-five days to respond. *Id.*

Here, Gillespie produced a Section 290.140 demand letter dated October 19, 2011. He mailed it to Fredericks at BMS via United States Postal Service certified mail. Although Fredericks claims he never saw the letter, his assistant signed for some envelope on October 20. BMS did not respond to this letter within forty-five days. The record permits reasonable conflicting inferences on whether Gillespie made a proper request for the reasons for discharge. The Court denies summary judgment on Count V.

## Conclusion

For the reasons discussed above, BMS's Motion for Partial Summary Judgment (Doc. 94) is GRANTED IN PART and DENIED IN PART. Counts II, III, and IV are dismissed in their entireties.

**IT IS SO ORDERED.**

Date:   September 30, 2014                                      /s/ Greg Kays
                                                              GREG KAYS, CHIEF JUDGE
                                                              UNITED STATES DISTRICT COURT